**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>AMERITRANS CAPITAL CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 16-13842 (MSH) |

**MOTION OF CHAPTER 7 TRUSTEE FOR ALLOWANCE AND PAYMENT OF
INVESTIGATION FEES AND EXPENSES OF THE LAW FIRM OF RIEMER &
BRAUNSTEIN LLP AND ORDER OF $250,000.00 FROM XL SPECIALTY
INSURANCE COMPANY ("XL") PURSUANT TO THE PROVISIONS IN THE
INSURANCE POLICY FOR REIMBURSEMENT OF INVESTIGATIVE FEES**

John O. Desmond, the Chapter 7 Trustee (the "**Trustee**") of the estate of Ameritrans Capital Corporation (the "**Debtor**") moves this Court to authorize the allowance of and payment to the law firm of Riemer & Braunstein LLP (the "**Law Firm**"), counsel herein, pursuant to 11 U.S.C. §§ 330, 331, 503(a) and 507(a)(1), Fed. R. Bankr. P. 2016 and MLBR 2016-1 in the amount of $252,141.00 and expenses in the amount of $9,951.40, as well as the entry of an order directing reimbursement in the maximum amount of $250,000.00 from XL Specialty Insurance Company ("**XL**") pursuant to the Debtor's policy[1] with XL (the "**XL Policy**") for reimbursement of investigative and evaluative fees and expenses incurred in connection with the potential shareholder derivative demands including, but not limited to, the litigation, now property of the Estate, initiated by Robert C. Ammerman in the State of Delaware against the Debtor's former directors and officers (the "**D&Os**") for their alleged breaches of fiduciary duties and wrongful acts (the alleged "**Wrongful Acts**"). After reimbursement and application of payment by XL, the remaining balance due and owing to the Law Firm should be payable directly from the

---

[1] The D&O Policy for which claims have been asserted is policy no. ELU 123910-11.

Debtor's Bankruptcy Estate (the "**Estate**"). The specific fees and expenses of the Law Firm in this Motion, relate solely to the reasonable and necessary legal services rendered by the Law Firm concerning the investigation into the previously alleged Wrongful Acts by former Directors and Officers of the Debtors including those claims arising from and related to litigation pending in the Chancery Court in Delaware covered by the XL Policy for which reimbursement is permitted and required pending authorization of this court of the requested fee allowance and reimbursement. XL through its counsel has indicated to the Trustee that it has no objection to having this court adjudicate and resolve of the amount of said fees for reimbursement from XL to the Trustee of up to $250,000.00 for such investigative and evaluative services pursuant to the Policy. In support of this Motion (the "**Motion**") the Trustee respectfully represents as follows:

## I.    BACKGROUND

1.    The Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code on October 5, 2016.

2.    The Trustee was appointed on October 6, 2016.

3.    On October 6, 2016, the Trustee filed an application to employ the Law Firm as counsel. A copy of the Order dated October 31, 2016 allowing the Employment Application is attached hereto as Exhibit A.

4.    This is the Trustee's first request for allowance and payment for Investigation Fees and Expenses from the XL Policy for services rendered by the Law Firm from October 5,

2

2016 through September 29, 2017.[2]

5. The narrative summary, statement of services, and supplemental exhibits provide the requisite specificity sufficient to permit this Court to evaluate the services rendered by the Law Firm on behalf of the Trustee and find that: (a) the legal services were actual, necessary and valuable to the Estate and related to the Investigation and evaluation of the Wrongful Acts; (b) the time expended per each attorney and paralegal and the amount of compensation sought are justifiable and reasonable; (c) the legal services provided were not services which were administrative in nature and therefore should have been performed by the Trustee; and (d) there was little, if any, duplication of services rendered and only where necessary.

## II. NARRATIVE OF SERVICES

6. As of the Petition Date, the Debtor had several distinct categories of assets: one being litigation involving claims against the D&O's who also faced claims as directors and officers of a non-debtor subsidiary of the Debtor, known as Elk Associates LLC ("**Elk**").

7. The litigation involving the Debtor consisted of two actions then pending in the Delaware: Chancery Court against the D&O's (the "**D&O Litigation**").

8. The D & O Litigation in the Delaware, Chancery Court, had been on the precipice of being dismissed for lack of prosecution because the Debtor had run out of funds to pursue the D&O Litigation. Intervention by the Trustee was thus critical to prevent the case from being dismissed which would have been disastrous because those claims asserted in the D&O Litigation had been timely filed within the requisite time frame and recognized by XL as covered

---

[2] Though the Law Firm's investigation of the Wrongful Acts continues, once the maximum amount of the $250,000.00 coverage under the XL Policy is paid there are no further fees reimbursable by XL to the Estate for investigative and evaluative services as they pertain to the Shareholder Derivative Demand analysis pursuant to Endorsement 17 of the Policy.

3

under $5 million XL Policy. Hence, if dismissed and re-filed in the Bankruptcy Court at a later date those claims would not be covered by the XL Policy, which was property of the Estate and not subject to any Trustee coverage exclusion. Equally challenging was that the law firm(s) that had represented the Debtor's interests in the D&O Litigation would not agree to be employed as special counsel or even local counsel to the Trustee because there were no funds or likelihood of funds in the Estate at that time for payment.

9. More, specifically, several years prior to the Petition Date, the Small Business Association (the "**SBA**") had successfully moved in the Eastern District of New York for the appointment of a Federal Court Receiver over Elk (the "**SBA Receiver**"), which was the Debtor's sole subsidiary. Thereafter, the SBA Receiver had seized the assets and records of Elk (which included the majority of the records of the Debtor). The SBA Receiver had asserted claims but had not yet filed any action against the Officers and Directors of Elk, (who were the same D&O's of the Debtor).[3]

10. The Law Firm, on behalf of the Trustee (and earlier, the Debtor and its principal) had previously provided notice under the XL Policy of multiple claims against the D&O's (the "**Claims**") (as well as a claim against XL for payment and/or reimbursement of the $250,000.00 investigative fee pursuant to Endorsement 17 of the XL Policy). As such, no additional premium was required to pursue the Claims, including but not limited to Shareholder Derivative Demand Claims, which Claims the Trustee intends to continue to pursue, insistent that such Claims had been timely submitted to XL. Furthermore, pursuant to Endorsement No. 36 to the XL Policy,

---

[3] In July 2017, the SBA Receiver filed its lawsuit against the Officers and Directors of Elk, which is pending in the United States District Court for the Eastern Division of New York (the "**Elk Litigation**"). The Directors and Officers of Elk have filed a Motion to Dismiss. The first hearing on the Elk Litigation, originally scheduled for October, has been rescheduled to April 2018.

4

the runoff period for the XL Policy had been previously duly extended to April 23, 2019 as so acknowledged by XL. Accordingly, the Law Firm on behalf of the Trustee placed XL on notice of the Claims.

11. The Trustee, by virtue of his appointment, had standing as the successor plaintiff in the D&O Litigation including any amended claims, all of which placed XL on notice of such Claims, which the Trustee had instructed the Law Firm to investigate.

12. The Law Firm, on behalf of the Trustee, also communicated with XL regarding payment or reimbursement of the Endorsement No. 17 Investigation Fee in the maximum amount of $250,000.00 for the purpose of holding money in reserve and regarding the litigation issues on appeal, all of which will become moot, pending the disposition and compliance with this Motion.

13. As an alternative and in an effort to save what the Trustee determines to be an enormous expenditure of litigation resources given (a) the SBA Receiver's recent suit against the same Officers and Directors; and (b) the D&O's repeated statements that it will not settle with one and not the other, the Trustee duly presented an omnibus written settlement proposals the latest of which is under consideration by all of the relevant parties.

14. Simply put, the investigation has substantiated claims against the XL Policy that have been timely asserted with regards to Claims pending in the D&O Litigation and may hereafter be asserted in the name of the Trustee concerning the following **Wrongful Acts** of the D&O's evolving from the Law Firm's investigation of the Claims:

    (a)    That the D&O's improperly authorized the Debtor to follow the directives of the officers of ELK, when they knew or had reason to know that ELK's officers and

5

directors were alleged to be diverting funds and that the Debtor was continually undercapitalized which constituted a breach of their fiduciary duties and duties or care, and a blatant conflict of interest;

(b) That by permitting the Debtor to commit and pay substantial legal fees to defend the acts of ELK's D&O's, the D&O's improperly utilized the Debtor's funds despite the fact the D&Os had a conflict of interest that required them to retain an independent CEO, board and counsel;

(c) By incurring obligations to the SBA and the other claimants it enabled the Debtor to operate without sufficient capital or ability to raise sufficient capital to the Debtor's detriment;

(d) By their collective actions, the D&O's prevented the Debtor from availing itself of the investment capital it had legitimately raised (because of the SBA's refusal to authorize the Debtor to retain and deploy investments) and to jeopardize the Debtor's investment in SoHa Terrace LLC ("**SOHA**") and prevent SOHA's assets from being hypothecated.

15. As noted, the Law Firm on behalf of the Trustee formulated a series of proposed settlements and negotiation avenues as more information was ascertained during the Investigation. Presently, an omnibus proposal formulated, drafted and circulated in October 2017 is under consideration by all relevant parties as is the alternative of a proposed settlement methodology.[4]

---

[4] As noted, the D & O's have repeatedly informed the SBA Receiver and the Trustee that they will only enter into a settlement with both parties – which is consistent with the pending omnibus settlement proposal by the Law Firm.

16. Rather than filing a Motion in the bankruptcy court to compel payment for the $250,000.00 investigative fees from XL regarding the Wrongful Acts, including the Claims asserted by the D&O Litigation and such other actions; or prosecuting the appeal and seeking costs on the grounds that the issue on appeal is moot because of the Trustee's appointment, meaning XL has no grounds to further prosecute the I v I issue on appeal; or filing an action against XL demanding payment of the XL Policy, the Trustee has proposed and XL has no opposition to the suggestion that the relief requested in this Motion for reimbursement shall suffice and that the Bankruptcy Court is best suited to hear and determine the amount of fees and expenses entitled to reimbursement from the XL Policy and order its immediate payment or reimbursement from the XL Policy for the investigative and evaluative services incurred on behalf of the Trustee by the Law Firm.

17. The Trustee remains prepared to seek a global resolution of all the claims with the SBA Receiver, given that the Directors and Officers of the Debtor and Elk were the same. Additionally, the Trustee will prepare and file objections to the proofs of claim filed in this case by each of the D&O's.

### III.    STATEMENT SEEKING COMPENSATION

18. Pursuant to 11 U.S.C. § 330, the Law Firm is entitled to "reasonable compensation for actual, necessary services" and "reimbursement of the investigative fees for actual, necessary expenses." 11 U.S.C. § 330. The Trustee on behalf of the Debtor's Estate is also entitled to reimbursement from XL under the XL Policy.

19. Neither payment nor compensation has been made or promised to the Law Firm for services rendered or services to be rendered in connection with this case. No agreement or

understanding exists between the Law Firm and any other person for the sharing of compensation which may be received pursuant to this Motion except among the partners of the Law Firm.

20.  The compensation requested by the Law Firm is reasonable compensation for the actual and necessary legal services rendered by the Law Firm for the investigative and evaluation of the Wrongful Acts and Claims, based upon the time, nature, extent and value of the services rendered in connection with such matters. The Law Firm further submits that the cost of services rendered for and on behalf of the Trustee in this case is comparable to the cost of similar services in legal matters other than those under the Bankruptcy Code.

21.  The compensation requested for the services performed by the Law Firm is based upon the regular hourly rates for the attorneys most qualified to do the legal services described commensurate with the type of work which had to be performed. The Law Firm has expended a total of 409.20 hours recorded at the regular hourly rates in the rendition of the investigative services in this Motion, at a net Lodestar Calculation of $252,141.00. A detailed reporting of the time which has been reasonably expended by each attorney and paralegal in representing the Trustee in this matter is attached hereto as Exhibit B.

### IV.    STATEMENT OF NORMAL HOURLY RATES

22.  Exhibit B reflects the total hours per attorney and paralegal and the normal hourly rates which have been charged without considering the size and degree of responsibility, difficulty, complexity, and results achieved herein. Exhibit C details in a computer-generated format, the specific services rendered by each respective attorney and/or paralegal for the services provided in connection with the investigation.

## V. SUMMARY OF EXPENSES INCURRED

23. The Law Firm has incurred actual and necessary expenses in the rendition of services on behalf of the Trustee the Estate regarding the investigation in the aggregate amount of $9,130.44, for which the Law Firm has not been reimbursed. Attached hereto as <u>Exhibit D</u> is a summary of the expenses incurred.

## VI. CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order as follows:

(1) allowing the Motion for allowance and payment to the Law Firm for the Investigation Fees in the amount of $252,141.00;

(2) allowing the amount of $9,130.44 for the reimbursement of necessary expenses rendered for the benefit of the Estate related to the Investigation;

(3) directing XL to forthwith pay the sum of $250,000.00 to the Estate for reimbursement of allowed investigative and evaluative fees under the XL Policy;

(4) authorizing the Trustee to pay the remaining balance of $2,141.00 from the Estate;

(5) authorizing the Trustee to pay the amount of $9,130.44 in expenses to the Law Firm from the Estate; and

(6) granting such other and additional relief as may be appropriate under the circumstances.

9

Respectfully submitted this 15th day of November, 2017.

                    JOHN O. DESMOND, CHAPTER 7
                    TRUSTEE OF AMERITRANS CAPITAL
                    CORPORATION,

By his attorneys,

RIEMER & BRAUNSTEIN LLP,

*/s/ Alan L. Braunstein*
Alan L. Braunstein (BBO #546042)
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA  02108
(617) 523-9000
abraunstein@riemerlaw.com

2220241.2

10