UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>AMERITRANS CAPITAL CORPORATION,<br>Debtor. | Chapter 7<br>Case No. 16-13842 (MSH) |

### TRUSTEE'S STATUS REPORT TO NOTICE OF INACTIVITY

John O. Desmond, the Chapter 7 Trustee (the "**Trustee**") of the estate of Ameritrans Capital Corporation (the "**Debtor**"), hereby submits this Status Report (the "**Report**") in response to the Court's Notice of Inactivity.

### I.     BACKGROUND

1.     The Debtor filed its Bankruptcy Case on October 5, 2016.

2.     The Trustee was appointed on October 6, 2016.

3.     The United States Business Administration (the "**SBA**") as Receiver (the "**Receiver**") for Elk Associates Funding Corp. ("**Elk**"), a wholly owned subsidiary of the Ameritrans, is the largest claimant in this case by a substantial amount.  That claim is based on allegations set forth in an action filed in July 2017 by the Receiver in the Federal District Court for the Eastern Division of New York (the "**Receiver Action**") against the officers and directors of Elk who had similarly been the officers and directors of Ameritrans (the "**SBA Litigation**").

4.     The Trustee has received electronic copies of thousands of Ameritrans's documents in the possession of the SBA as Receiver of Elk, which had physical and substantial possession of Ameritrans's documents relating to the Receivership and the SBA Litigation. Additionally, the Trustee has received nine (9) file boxes of documents from Ameritrans's

bankruptcy counsel, which he has reviewed. Yet, both the SBA and Trustee have concluded neither party has received all relevant documents.

## II. THE THREE PENDING LITIGATION CASES

5. Prior to the Debtor's bankruptcy filing, a law suit had been commenced in the Delaware Chancery court entitled Robert C. Ammerman, v. Michael Feinsod, et al., and Ameritrans Capital Corporation, C.A. No. 8719-VCG), which is now an asset of the bankruptcy estate and controlled by the Trustee (the "**Ameritrans D&O Litigation**"). The Ameritrans D&O Litigation has been stayed by request of the Trustee in light of the SBA Litigation which is against the same officers and directors only in their capacity of officers and directors of Elk. The Trustee had filed periodic reports with the Delaware court in the Ameritrans D&O Litigation, as both the Trustee and SBA concur that it is not beneficial for resources of the Estate to be expended to prosecute two actions against the same defendants in different courts and states for claims arising from similar facts and somewhat overlapping legal theories.

6. Specifically, Ameritrans holds an insurance policy (the "**Policy**") with $5 million dollars in coverage with XL Specialty Insurance Company ("**XL**"). XL has acknowledged that the claims in the Ameritrans D&O Litigation are covered claims. XL has not determined if the claims in the SBA Litigation are covered claims under the Policy, however the SBA asserts and XL does not dispute that coverage also applies to the SBA Litigation of Elk.

7. XL is also an appellant in another pending case with the Trustee in another Delaware court for reimbursement of $250,000 in investigation costs (the "**Investigation Costs**") pursuant to the Policy and under which Ameritrans's prevailed against XL and which XL has appealed (the "**Appeal**"). The Appeal filed by XL is solely over the purported insured vs. insured exception in the Policy, which exception is deemed moot by the appointment of the

Trustee. Similar to the Ameritrans D&O Litigation the proceeding has been stayed and the Trustee has provided updated Status Report.

8. After the Trustee had ample opportunity to review and to conduct an initial investigation of the SBA claims, the Ameritrans D &O Litigation and the Appeal, he commenced negotiations with counsel to each relevant party, including attorneys for the D & O's and sent a Confidential Settlement Correspondence to the parties, all of whom have appeared and filed proofs of claims in the bankruptcy case, and to the attorneys and designated representative of XL (the "**Proposal**"). Since receipt of the Proposal the Trustee engaged in further discussions with counsel to the various parties in furtherance of an omnibus resolution.

9. In furtherance of the negotiations, the Trustee sent an updated settlement proposal to XL and to others on October 6, 2017 (the "**Updated Settlement Letter**").

10. Presently, the Trustee is continuing to work on a draft proposal for XL, (in lieu of an adversary proceeding to compel XL to reimburse payment of the Investigative Costs incurred by the Trustee) which, if approved, will moot the Appeal. In the interim the Trustee has filed periodic updates to the Delaware Court where the Appeal is pending, which has been stayed by that court pending settlement efforts. Consequently the Trustee has provided and continues to provide periodic status reports whenever requested by that court.

11. On April 16, 2018, in the U.S. District Court for the Eastern District of New York (the "**Eastern District Court**"), a hearing was to be held on the SBA Litigation for which all relevant parties were required to be present in person which included their respective decision makers.[1]

---

[1] The Trustee intervened in the SBA Litigation as none of the defendants or XL would settle without the Trustee being a part of any settlement.

12. The purpose of the April 16, 2018 hearing (the "**April 16 Hearing**"), in the SBA Litigation was (i) to address the status of settlement negotiations that had been initiated by the Trustee and to obtain an update from the SBA Receiver; and (ii) to ascertain whether the SBA Receiver was willing to follow the Trustee's suggestion for mediation if a settlement agreement could not be reached at the April 16 Hearing, as other parties had earlier expressed an interest in mediation in Boston or New York.

13. Unfortunately, just days prior to the April 16 Hearing, the Trustee was informed by attorneys for the SBA Receiver that the presiding judge had unexpectedly passed away. The Trustee was further informed that the Eastern District Court was not only cancelling the hearing, but no hearing would be rescheduled until the case had been re-assigned to a new judge. To date, there has been no such re-assignment from the Chief Judge of the Eastern District Court. Thus, the parties are awaiting re-assignment and a new hearing and as of this date none has been set.

## II.   THE SOHA INTEREST: SALE AND BANKRUPTCY CLAIMS

14. As of the Petition Date, the matters involving the SOHA asset consisted, among other things, of (i) determining how to effectuate a sale of the Debtor's SOHA membership interest to optimize its value, and (ii) to enforce claims of the Trustee despite the obstacles of double-derivative standing in the Ladera Bankruptcy Cases (the "**Ladera Cases**") and against 2280 FDB, LLC.

15. Further complicating the SOHA issue was a pending arbitration proceeding in New York (the "**Arbitration**") initiated by the other minority member of SOHA, USHA SOHA Terrace LLC ("**USHA**"), against the Debtor and against the majority member and manager of SOHA, RGS Holdings LLC, and its owner Hans Futterman ("**Futterman**") and other Futterman-

4

affiliated entities. The key focus of the Arbitration involved whether RGS would be removed as managing member, a vital issue because it also implicated removal of the managing member of 2280 and (ii) a resolution of standing issues to permit 2280 controlled by Futterman.

16. Though the Trustee's intervention in the Ladera Cases was essential to preserve and protect interests in the property of the Estate, the Trustee's standing was perpetually challenged until resolution at the hearing on confirmation, which involved negotiated settlements and the pathway for (1) the successful sale of the Debtor's interest in SOHA by the Trustee; (2) a certain payment from the Ladera lender to the Trustee; (3) allowance of a claim in which the Trustee has an interest; and (4) preservation of the Trustee's right to reimbursement from 2280 FDB LLC. Specifically, the Trustee's efforts in the Ladera Cases eventually allowed him to monetize his interests both through the SOHA sale by this court for $1,250,000.00 as well as claims thus far generating an additional $72,500 from the Ladera Cases.

### III.     POTENTIAL AVOIDANCE CLAIMS

17. The Trustee has investigated potential avoidance claims and thereafter sent a series of inquiries to recipients of potential recoverable payments for an explanation as to the underlying transaction surrounding the payments. The deadline for responses has passed and the Trustee and his counsel are evaluating the propriety of payments to determine if viable affirmative claims exist, and if so, will be prosecuted.

### IV.     OTHER POTENTIAL ASSETS

18. Unlike the Debtor's transactions involving SOHA, there seemed little justification to support certain "investments" that did not bear fruit for the Debtor and that a further in-depth assessment as to any potential value is not a rational expenditure of estate assets. However,

5

some minimal recoveries have been generated without any meaningful expenditure of the estate's resources.

## V.    RECOVERY EFFORT: LADERA

19.    The Trustee has provided sufficient detail to the Ladera Winddown affidavit that should generate a recovery on a $5,000,000 allowed 2280 FDB claim (of which the Estate has an interest) in the Ladera case the Trustee also negotiated and which the estate excluded from the SOHA sale.  However, the Trustee, in balancing the economics, has decided to no longer engage or more importantly deploy, time and expenses in the miasma of the Ladera Cases, Futterman Case and the Arbitration confirmation proceedings, especially having facilitated the successful sale of SOHA assets in this case.  Predictably, the factions in those other cases have expended millions in fees, while the litigation continues.  Instead the Trustee has since focused on recoveries that would generate 100% dollars, and not be nearly as speculative.

## VI.    THE PROOFS OF CLAIMS

20.    With the exception of one creditor – a disputed priority claim of the NY taxing authority – the other claims filed in this case are those of the SBA Receiver – an amended claim of approximately $14 million dollars; and claims of each of the D and O defendants in both the Ameritrans D & O Litigation and the SBA Litigation.

21.    The Trustee reviewed the first proof of claim of the SBA Receiver when filed and the SBA amended claim (the "**SBA Claim**") after the commencement of the SBA Litigation. The Trustee's initial review of the operative and extensive SBA Claim requires further detailed scrutiny.  However that is not warranted at this juncture due to the posture of the SBA Litigation, which if successful, would likely constitute allowance of the SBA Claim, and payable from litigation proceeds.

22. The proof of claims filed by the D & O's – all similarly prepared and for indemnification – are disputed and will likely be the subject to an objection by the Trustee.

### VII. TRUSTEE'S AGENDA TO EFFECTUATE DISPOSITION OF CASE

23. The Trustee continues to monitor the docket of the Eastern District Court case. Meanwhile, the Trustee has expressed to each party a further willingness to re-commence settlement negotiations for which XL has concurred.

24. The Trustee will be submitting to XL a proposed settlement stipulation consistent with earlier negotiations to resolve the Appeal and facilitate reimbursement of the Investigation Costs associated with the disposition of fees allowed by this court and pursuant to its order of January 2, 2018. The Trustee expects there to be an opposition filed by the D&O claimants to any settlement stipulation.

25. The Trustee will seek reimbursement for legal fees from 2280 FDB upon disposition of the NY state court action upon its expected confirmation of the Arbitration Order. If the manager becomes USHA, then based upon discussions with USHA's counsel such payment will be reimbursed from 2280 FDB. However, upon information and belief the hearing to confirm the Arbitration Award was stayed by Futterman's Chapter 11 bankruptcy case, which has been converted to a Chapter 7 case.

26. The Trustee expects to file prior to October 1, 2018, (and only if warranted) any justifiable adversary proceedings to recover any avoidable payment.

27. The Trustee believes that negotiations among the Trustee, SBA Receiver, XL, and the D&O's are expected to bear fruit once (i) the Eastern District Court reconvenes/reschedules the April 18 Hearing, or (ii) the parties collectively agree to mediate. Since the commencement of this case the Trustee has reached out to the each of the relevant parties, and despite

responsiveness to the Trustee – including to his initial written settlement, it is only the Trustee's and XL (and by intimation the Eastern District Court) who have embraced or made overtures to engage in settlement negotiations among all of the parties.

### VIII. CONCLUSION

28. This report, including with respect to the initial assessment of any proof of claim, is preliminary and not a statement of the Trustee's ultimate position. Any need for disposition is premature in light of the Trustee's belief that settlement negotiations – if initiated by the Eastern District Court (as had been intended) will bear fruit. Alternatively, the Trustee persists in his efforts to have all of the parties agree to join in a request for this court (where all parties have appeared and filed claims) to appoint another bankruptcy judge in this district to assist in a mediation process in an effort to facilitate an omnibus resolution.

Respectfully submitted this 1st day of August, 2017.

> JOHN O. DESMOND, CHAPTER 7
> TRUSTEE OF AMERITRANS CAPITAL
> CORPORATION,
>
> By his attorneys,
>
> RIEMER & BRAUNSTEIN LLP,
>
> */s/ Alan L. Braunstein*
> Alan L. Braunstein (BBO #546042)
> Riemer & Braunstein LLP
> Three Center Plaza
> Boston, MA  02108
> (617) 523-9000
> abraunstein@riemerlaw.com

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>AMERITRANS CAPITAL CORPORATION,<br><br>Debtor. | Chapter 7<br>Case No. 16-13842 (MSH) |

**CERTIFICATE OF SERVICE**

I, Alan L. Braunstein, hereby certify that I caused to be served on August 1, 2018 a true and accurate copy of the **TRUSTEE'S STATUS REPORT TO NOTICE OF INACTIVITY** by electronic notification (EN) where indicated, to the individuals listed below including the Participants:

Office of the United States Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV (EN)

John O. Desmond
5 Edgell Road, Suite 30A
Framingham, MA 01701
trustee@jdesmond.com, jdesmond@ecf.epiqsystems.com (EN)

Michael J. Goldberg, Esq.
David Koha, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
goldberg@casneredwards.com, koha@casneredwards.com, luo@casneredwards.com (EN)

James G. Atchison, Esq.
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI 02860
jatchison@shslawfirm.com (EN)

Arlene M. Embrey, Esq.
SBA as Receiver of Elk Associates Funding
409 3rd Street, SW 7th Floor
Washington, D.C. 20416
Arlene.embrey@sba.gov (EN)

Martin L Seidel, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
mao@willkie.com, mseidel@willkie.com  (EN)

Daniel C. Cohn, Esq.
Jonathan Horne, Esq.
Murtha Cullina LLP 99 High Street
Boston, MA 02110-2320
dcohn@murthalaw.com; jhorne@murthalaw.com  (EN)

Steven Etra
c/o Keith R. Murphy, Esq.
   Michael A. Sabella, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
kmurphy@bakerlaw.com
msabella@bakerlaw.com   (EN)

Stephen F. Gordon, Esq.
Todd B. Gordon, Esq.
Katherine P. Lubitz, Esq.
The Gordon Law Firm
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
tgordon@gordonfirm.com
klubitz@gordonfirm.com  (EN)

/s/ Alan L. Braunstein
Alan L. Braunstein (BBO #546042)
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
abraunstein@riemerlaw.com

2350319.3